Gretchen CAOLA, Plaintiff,

v.

DELTA AIR LINES, INC., Delta Family Care Disability and Survivorship Plan, Defendants.

No. Civ.A. 97–40077–NMG.

United States District Court,
D. Massachusetts.

July 20, 1999.

Chester V. Shea, III, Worcester, MA, · for plaintiff.

Wilfred J. Benoit, Jr., Goodwin, Proctor & Hoar, Boston, MA, for defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

On May 7, 1997, Plaintiff Gretchen Caola ("Caola"), a Massachusetts resident, brought this action against Defendants, Delta Air Lines, Inc. ("Delta"), and Delta Family Care Disability and Survivorship Plan ("the Delta Plan") (both referred to collectively as "Defendants"). Against the Delta Plan, Caola asserts a claim for short-term disability ("STD") benefits (Count I).[1] Against Delta, Caola brought additional claims for violation of maternity leave rights, pursuant to M.G.L. c. 149 § 105D (Count II), and for intentional infliction of emotional distress and constructive discharge (Count III).

Defendants sought summary judgment in their favor on all counts. On February 3, 1999, this Court granted summary judgment to Delta on Counts II and III, thereby dismissing Delta from the suit, but denied summary judgment to the Delta Plan as to Count I. Pending before this Court is a motion by the Delta Plan (Docket No. 25) for reconsideration of this Court's Order denying the Delta Plan's motion for summary judgment with respect to Count I.

## I. Background

The facts giving rise to this dispute are set forth in detail in this Court's Memorandum and Order entered February 3, 1999 (Docket No. 23). What follows is a brief summary of the undisputed facts pertinent to the instant pending motion.

### A. Caola's Employment By Delta

Caola was employed by Delta as a flight attendant from February 25, 1992, until her resignation on October 11, 1996. In the course of her employment, Caola held a "line," meaning that she bid for a schedule of trips on a monthly basis based on seniority. Additionally, for any days on which she was not scheduled to work, Caola understood that she had the opportunity to "pick up" trips from other flight attendants when she was not scheduled to work her regular flight schedule.

In July, 1995, Caola applied for and was granted an eight-month unpaid Company Convenience Leave of Absence ("CCL") which was scheduled to run from September 1, 1995, through April 30, 1996. Accordingly, she began her unpaid CCL on September 1, 1995.

In the meantime, Caola's schedule in August, 1995, called for her to work approximately fourteen days between August 1 and August 24 and to be off for the remainder of the month. On August 11, however, she notified Delta she was suffering from diarrhea and would be absent from work. On August 24, 1995, Caola notified Delta that she was feeling better and was able to return to work, but she did not work any additional days in August. On August 30, 1995, Caola's doctor informed her that she was pregnant.

### B. The Delta Plan

The Delta Plan, a non-contributory employee welfare benefit plan established and

---

**1.** In her complaint, Caola asserts that "this action arises under [ERISA], 29 U.S.C. § 1140" and does not specifically refer to 29 U.S.C. § 1132(a)(1)(B). However, because it is apparent that count I asserts a claim for benefits under an ERISA plan, this court treats count I as a claim under § 1132(a)(1)(B).

maintained pursuant to Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., provides for both STD benefits and long-term disability benefits to non-pilot employees of Delta. The Delta Plan's Administrative Committee is the Plan Administrator and the Named Fiduciary (as those terms are defined in ERISA) for the operation and administration of the Delta Plan.

Section Two of the Delta Plan sets forth the eligibility criteria for benefits under the Delta Plan. Section 2.01(a) provides:

> *Short Term Disability Benefits:* Subject to all applicable provisions of this Plan, an Employee shall be eligible for the short-term disability benefits described in Section 4.02 only if: ... [sh]e is an Employee on an approved Company Convenience Leave of Absence.

Section 4 of the Delta Plan pertains specifically to disability benefits. Section 4.01, one of the sections which describes the eligibility criteria for disability benefits provides:

> *Eligibility for Disability:* An Employee shall be eligible for Short–Term Disability Benefits under Section 4.02 of the Plan only if such disability commences while the Employee is eligible under Section 2.01(a) or 2.02.... An Employee who is eligible for either Short–Term or Long–Term Disability Benefits under the Plan shall be eligible for such benefits only so long as he is under the care of a physician or surgeon for the injury or disease or pregnancy which is the disabling condition and meets the other requirements of the Plan.

Section 4.06 of the Delta Plan, entitled "Successive Disabilities", governs when an employee can become eligible for an additional period of short term disability and provides:

> If ... at any time an Employee who qualifies for Short–Term Disability ... no longer qualifies for such benefits, no further benefits for that disability shall be paid under the Plan unless the Employee returns to work and performs his customary occupation on a full-time basis for at least two consecutive weeks. An Employee may, however, qualify for a new period of disability upon returning to work for one day, if such disability results from an entirely different or unrelated cause from the previous disability.

### C. Caola's Request for STD Benefits

On January 2, 1996, while still on Company Convenience Leave ("CCL"), Caola applied for STD benefits under the Delta Plan in connection with her pregnancy for a 26–week period to commence January 20, 1996, the first day of her 27th week of pregnancy.[2] With her application, she submitted medical certification from her obstetrician stating that Caola would be disabled from performing her job as a flight attendant on January 19, 1996, the last day of her twenty-sixth week of pregnancy and that her expected delivery date was April 20, 1996.

On February 9, 1996, Delta informed Caola that, pursuant to Section 4.02 of the Delta Plan, her disability period had commenced on August 14, 1995, and that she would be paid for only three weeks of STD benefits beginning January 20, 1996, because her 26–week STD period would expire on February 11, 1996.[3] On March 4,

---

**2.** Pursuant to Delta's pregnancy/childbirth leave policy for flight attendants, a pregnant flight attendant may be eligible for disability benefits at the beginning of her 27th week of pregnancy.

**3.** Section 4.02 of the Delta Plan provides as follows:

> An eligible Employee shall qualify for Short Term Disability benefits when disabled as a

result of a demonstrable injury or disease (including mental or nervous disorders) or pregnancy which prevents the Employee from engaging in the Employee's customary occupation. The duration of the Short–Term Disability period is 26 weeks following the date the disability commenced.... During the period an Employee qualifies for Short Term Disability, [s]he shall be eligible to receive income benefits in an amount

1996, in a letter to Caola explaining how her benefits were calculated, Delta further explained to Caola that the "Successive Disabilities" rule set forth in Section 4.06 of the Delta Plan precluded her from receiving her requested STD benefits because she had failed to return to work between disability periods as required by the Delta Plan.

Under the Delta Plan's review procedure, Caola appealed the decision regarding the extent of her available STD benefits to the Administrative Subcommittee ("the Subcommittee") and later to the Administrative Committee ("the Committee"). Caola's appeals were denied based upon the same reasoning relied upon by Delta, and the Delta Plan concluded that Caola was ineligible for the STD benefits she requested. *See* Stipulation of Facts (Docket No. 28) at ¶ 35.

## II. Analysis

### A. Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery on file and affidavits "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The nonmovant, however, may not rest upon mere allegation or denial of the pleadings. Fed.R.Civ.P. 56(e). The Court must view the record in the light most hospitable to the non-moving party and indulge all reasonable inferences in his favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993).

### B. Discussion

The Supreme Court has determined that

"a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to review eligibility for benefits or to construe the terms of the plan".

*Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where a clear discretionary grant is found, "*Firestone* and its progeny mandate a deferential arbitrary and capricious standard of judicial review." *Recupero v. New England Tel. & Tel. Co.,* 118 F.3d 820, 827 (1st Cir.1997) (internal quotation marks omitted); *see Diaz v. Seafarers International Union,* 13 F.3d 454 (1st Cir.1994) (employing arbitrary and capricious standard).

In this case, the Delta Plan is vested with discretionary authority to determine eligibility. Sections 12.01 and 12.02 of the Delta Plan provide that:

"the Administrative Committee [of the Delta Plan] shall have the broadest discretionary authority permitted under law in the exercise of all of its functions including ... deciding questions of eligibility ... and the right to benefits."[4]

Given that express discretionary grant, this Court, therefore, reviews the

---

determined under Section 7.01; provided, however, such benefits shall commence on the later of the eighth day of disability or the cessation of Earnings, including sick leave or vacation, if taken, and provided further, any days for which the Employee

receives Earnings (as salary, sick leave pay, accident pay or otherwise) shall be counted in the period of Short–Term Disability.

4. *See* Defendants' Statement of Undisputed Facts, ¶¶ 11, 12.

Delta Plan's decision under a deferential "arbitrary and capricious" standard. That standard precludes judicial review of the merits and enables courts to determine only whether 1) the Administrative Committee's decision was supported by reasonably sufficient evidence and 2) the plan's guidelines were properly applied. *See Recupero v. New England Tel. & Tel. Co.,* 118 F.3d at 838; *Doyle v. The Paul Revere Life Ins. Co.,* 144 F.3d 181, 184 (1st Cir. 1998) (citing *Associated Fisheries of Maine, Inc. v. Daley,* 127 F.3d 104, 109 (1st Cir.1997)). The critical inquiry for the court is whether the interpretation of the plan was reasonable. *Terry v. Bayer Corp.,* 145 F.3d 28, 40 (1st Cir.1998).

The Delta Plan argues that the decision of its plan administrator regarding Caola's benefits was reasonable and is entitled to substantial judicial deference. The logic of the plan administrator's decision can be summarized as follows:

Section 4.02 provides in relevant part that "any days for which the Employee receives Earnings (as salary, sick leave pay, accident pay or otherwise) shall be counted in the period of Short Term Disability." The Delta Plan interprets this language to mean that the 26–week STD period commences on the date the employee first took paid sick leave.

Applying that interpretation here, the Plan Administrator determined that Caola's paid sick leave on account of her diarrhea condition, beginning August 11, 1995, commenced a STD period.[5] The Plan Administrator concluded that, because Caola failed to return to work when her STD period ended, the "Successive Disabilities" provision of the Delta Plan precluded Caola from being eligible for a successive STD period commencing January 20, 1996.

For her part, Caola argues that her sick leave in August, 1995, did not commence a STD period because she was not under the care of a physician or surgeon at that time, as allegedly required by Section 4.01. Thus, she contends, Caola qualified for 26 weeks of STD benefits under the Delta Plan for the period commencing on January 20, 1996, when she entered her 27th week of pregnancy on that date and was no longer able to perform her customary occupation. She submitted a medical certification stating that she would be disabled from performing her job as a flight attendant on January 19, 1996 and that her expected delivery date was April 20, 1996.

■ In determining whether an interpretation of a plan is reasonable, courts have given due consideration to a number of factors, *inter alia,* 1) whether the interpretation renders any language in the plan "meaningless or internally inconsistent", 2) whether the interpretation is "clearly contrary to the clear language of the plan," and 3) whether the provision at issue has been interpreted and applied consistently. *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.,* 48 F.3d 365, 371 (8th Cir.1995); *see Finley v. Special Agents Mut. Benefit Ass'n,* 957 F.2d 617, 621 (8th Cir.1992); *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1188 (4th Cir.1989) (citing cases); *Waters Corp. v. Millipore Corp.,* 2 F.Supp.2d 66, 78, n. 7 (D.Mass.1997).

■ Here, the decision to deny STD benefits to Caola hinges on the Delta Plan's interpretation of Section 4.02 to mean that a period of sick leave from work always commences the disability period.[6] Caola argues that the Delta Plan's interpretation cannot be reconciled with, and indeed flatly contradicts, the pertinent language of Section 4.01, entitled "Eligibility for Disability", which provides that:

---

5. Pursuant to Section 2.01(a) of the Delta Plan, an Employee on an approved Company Convenience Leave of Absence is not precluded from being eligible for STD benefits described in Section 4.02.

6. Delta Plan suggests that, in the vast majority of cases, however, the employee returns to work before the need to seek STD benefits arises. *See* Motion to Reconsider (Docket No. 25) at 5.

an Employee shall be eligible for benefits *only so long as he is under the care of a physician or surgeon* for the injury or disease or pregnancy which is the disabling condition and meets the other requirements of the Plan.

(emphasis added). Caola asserts (and the Delta Plan does not dispute) that she was not under the care of a physician or surgeon in August 1995. She contends that the Delta Plan's interpretation is, therefore, unreasonable because it is inconsistent with and renders meaningless the language from Section 4.01 cited above. Indeed, Caola has support for her position. *See Waters,* 2 F.Supp.2d at 78 (rejecting interpretation as unreasonable because such interpretation rendered certain terms of the plan meaningless).

However, the Delta Plan premises its interpretation on a fundamental distinction between the term *"STD period"*, as it is used in Section 4.02 and the term *"STD benefits"* in section 4.01.[7] It contends that whether or not an employee is under the care of a physician is irrelevant to determining when an *STD period* commences, but rather is determinative only of an employee's eligibility for *STD benefits.* In that way, the Delta Plan maintains that its interpretation of Section 4.02 (to mean that an STD period commences any time an employee is on sick leave, regardless of whether that employee is under the care of a physician) is fully consistent with and does not render meaningless Section 4.01 of the Delta Plan.

In the context of this dispute, a stipulation filed subsequent to this Court's earlier summary judgment opinion becomes significant. The parties stipulated, *inter alia,* that the Administrative Committee and its delegates have consistently applied Section 4.02 of the Delta Plan to provide that a period of sick leave from work always commences the disability period. *See* Stipulation of Facts (Docket No. 28) at ¶ 38. That stipulation undermines Caola's position that Delta Plan's decision was unreasonable. *See Cooper Tire,* 48 F.3d at 371 (noting that one relevant factor in "reasonableness" analysis is whether provision at issue has been interpreted and applied consistently).

In light of the above, this Court concludes that the Plan's decision to deny Caola the STD benefits she is seeking here is premised on a reasonable interpretation of the Delta Plan and is not arbitrary and capricious. Accordingly, this Court will ALLOW summary judgment in favor of the Delta Plan on Count I.

## ORDER

The Delta Plan's motion to reconsider (Docket No. 25) is ALLOWED, and upon reconsideration and for the reasons stated above, the Delta Plan's motion for summary judgment (Docket No. 13) with respect to Count I is ALLOWED.

**So ordered.**

---

**7.** Delta Plan explains that when an employee cannot work due to illness or disability, it is to the employee's advantage to exhaust all available paid sick leave time (i.e. full pay) prior to applying for STD benefits (i.e. less than full pay). Pursuant to Section 4.02, the employee's sick pay time will be counted towards the 26–week STD period.

Upon exhausting all sick pay time, an employee may then apply for STD benefits (i.e. reduced pay). Eligibility for those benefits requires, *inter alia,* that the employee be under the care of a physician or surgeon for the disabling condition. Thus, under Delta Plan's explanation, the fact that an employee may be under the care of a physician has no bearing on whether a STD period has commenced.