Eileen **CHEEVER** et al.

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY**

**No. CIV.A. 99–11938RGS.**

United States District Court,
D. Massachusetts.

June 14, 2002.

Robert J. Gilbert, Gilbert & Renton, Andover, MA, for Eileen Cheever.

Jeffrey B. Renton, Robert J. Gilbert, Gilbert & Renton, Andover, MA, for Anthony Costanzo, Mary Ann Diebold, Rosemary Gibson, Edith Neil, Marilyn Nuss, Susan Oikelmus.

Neil Jacobs, Laura E. Schneider, Karen E. Schneck, Jamie E. Fink, Hale & Dorr, Boston, MA, for John Hancock Mut. Life Ins. Co.

### MEMORANDUM AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

STEARNS, District Judge.

On September 17, 1999, ten terminated employees of defendant John Hancock Mutual Life Insurance Company (Hancock), brought this complaint against Hancock in its capacity as administrator of the John Hancock Mutual Life Insurance Company Pension Plan (Plan).[1] Plaintiffs seek to clarify the amount of retirement benefits to which they are entitled under a 1994 amendment to the Plan. The complaint alleges an unlawful denial of benefits under 29 U.S.C. § 1132(a)(1)(B), a breach of fiduciary duty based on misrepresentations made both within and apart from the official Plan documents, and a claim for equitable estoppel based on Hancock's alleged

---

1. The case was stayed to permit settlement negotiations. Three of the original plaintiffs thereafter voluntarily dismissed their claims after being reinstated by Hancock.

oral and written misrepresentations.[2] On October 12, 2001, the parties filed cross-motions for summary judgment. Hancock seeks dismissal of all counts, while plaintiffs seek judgment on Count I.[3] On March 14, 2002, the court heard oral argument.

The undisputed facts are as follows. Plaintiffs were longtime employees of Hancock's Division of General Benefits Operations. All were vested participants in Hancock's retirement Plan. Under the lexicon of the Plan, the plaintiffs were designated as Class B Participants.

The Plan offered Class B Participants three routes to full retirement benefits. Under § 4.1 of the Plan, read in conjunction with § 1.12, a Class B Participant with at least five years of accrued service could retire at age 65 with full benefits. Under § 4.2(B) of the Plan, a Class B Participant could retire at age 60 with full benefits if his or her age plus years of service totaled at least 85. Finally, under the terms of the 1976 version of the Plan, a participant with 40 years of accrued service could retire at any time.

There was, however, a caveat. Section 8.1(A) of the Plan provided full benefits to a Class B Participant terminated from Hancock "other than by retirement" only if he or she had reached age 65.[4] Participants affected by § 8.1 received benefits adjusted according to a formula based on the number of months that he or she fell short of the Normal Retirement Date.[5] Hancock argues that because the plaintiffs were terminated before reaching age 65, they did not "normally retire," and that § 8.1 therefore applies.

And there was an early retirement provision. Under § 3.2(B) of the Plan, a Class B Participant with 15 years of service was permitted to take early retirement at age 55. His or her benefits, however, were reduced by the same § 4.3 formula that applied to § 8.1 terminees.

*The 1994 Amendment*

On October 11, 1994, anticipating a reduction-in-force, Hancock amended the Plan in two significant respects. First, Hancock lowered the age at which a Class B Participant could retire with full benefits to age 56, if the participant had accrued at least 25 years of service.[6] Second, it low-

---

**2.** Hancock previously argued in a motion to dismiss that plaintiffs' claims should be converted to a single claim for clarification of rights to future benefits because the plaintiffs had not reached the minimum retirement age of 50. The court mooted the motion to dismiss because all but one of the plaintiffs reached the threshold age during mediation, while the remaining plaintiff has been denied all benefits.

**3.** The parties have also filed four separate motions to strike affidavits and exhibits. The motions are *DENIED* in part. The court will only consider evidence on summary judgment that is properly supported and admissible.

**4.** The full text of § 8.1 is as follows.
If the Service of a Participant who has completed at least five (5) Years of Service is terminated, other than by retirement, such Participant will, subject to Article V, be entitled to receive

(A) a yearly amount of Pension determined in accordance with Section 4.1 commencing on the first day of the month in which he attains age sixty five (65), or
(B) the Pension described in (A) above subject to a reduction as described in Section 4.3, commencing on the first day of any month on or after the month in which he meets any of the requirements for Early Retirement described in Section 3.2.

**5.** The formula is set out in § 4.3. It reduces benefits by .4% for each month (or 4.8% for each year) that a terminated employee is shy of age 65.

**6.** Age 56 was chosen by subtracting ten years from the Social Security full benefits retirement age, which for the plaintiffs (who were all born after December 31, 1937) was age 66.

ered to 50 the age at which a Class B Participant with at least 15 years of accrued service could take early retirement, although again subject to the § 4.3 reduction-in-benefits formula.[7]

The 1994 Amendment stated:

1. Section 3.2, relating to Early Retirement Dates, is amended with respect to Class B Participants ... to provide that in addition to the current early retirement provisions, that on and after the first day of the month in which a Participant attains age fifty (50) he may retire on the first day of any month prior to his Normal Retirement Date provided he has completed fifteen (15) Years of Service.

2. Section 4.4(A), relating to the amount of Early Retirement Pension Benefits, is amended with respect to Class B Participants ... to provide that in addition to the current unreduced early retirement provisions, that such a Participant who has attained the first day of the month in the ten year period prior to his Social Security Normal Retirement Age and whose Years of Service equal at least twenty-five (25), shall be entitled to a Pension payable commencing on his Early Retirement Date in an amount equal to the sum of (a) the yearly amount of Pension which would be payable to him under Sections 4.1, 4.2 or 4.3, whichever would be applicable to him, if his Early Retirement Date were his Normal Retirement Date, but computed on the basis of his Compensation and Service prior to his Early Retirement Date, plus (b) the temporary Pension described in Section 4.4(B), if applicable.

After the 1994 Amendment, § 4.2(B) read as follows: [8]

(B) In the case of a Class B Participant, other than a Ford Group Office Clerical Employee, who is either an Employee or a Transferred Participant (a) who has attained the first day of the month in which his sixtieth (60th) birthday occurs and whose age in years and completed months plus his Years of Service equals at least eighty-five (85), or (b) who has attained the first day of the month in the ten-year period prior to his Social Security Normal Retirement Age and whose Years of Service equals at least twenty-five(25), the yearly amount of Pension payable commencing on his Early Retirement Date shall, subject to any applicable Sections of this Article and Articles V, VIII and IX, be equal to the sum of (1) and (2) below in the case of an Employee, and to (1) below in the case of a Transferred Participant.

(1) The yearly amount of Pension which would be payable to him under Section 4.1 if his Early Retirement Date were his Normal Retirement Date, but computed on the basis of his Compensation and Service prior to his Early Retirement Date;

(2) A temporary Pension payable:

(a) in the yearly amount of $3,000 until the first day of the month in which the Participant is first eligible for a Social Security Retirement Insurance Benefit, or would have been eligible absent his entitlement to the Social Security Disability Insurance Benefit, whether or not the Participant makes application for

---

7. The Amendment effectively eliminated the 40 years of service retirement option.

8. The intermediate § 4.2(A) did not apply to Class B participants.

such Social Security Retirement Insurance Benefit or Social Security Disability Insurance Benefit, and

(b) in the yearly amount of $1,620 from the date he is or would have been eligible, as described in (a) above, for a Social Security Retirement Insurance Benefit, until his Normal Retirement Date;

Stephen Brown, Hancock's Chief Executive Officer (CEO), convened a company-wide forum to announce, *inter alia,* the 1994 Amendment. At the forum, Brown told employees:

We are announcing today a liberalization to the company's pension plan, which will make it easier for longer service employees to retire, either with unreduced benefits, in some cases, or to have earlier access to reduced benefits in other cases. Specifically, while the Rule of 85 will remain intact for those over age 60, for those people between age 56 and 59, unreduced pension benefits will be available for anyone with at least 25 years of service. In addition, any employee between ages 50 and 55 with at least 15 years of service will have access to reduced pension benefits. Now a brochure is going to be distributed this afternoon detailing all of these changes.

Following the forum, a letter from Brown, together with the promised brochure, was hand-delivered to all Plan participants. Under the legend "Reflecting Changing Needs, Your Benefits Program," Brown's letter stated:

Unreduced pension. If you have 25 or more years of service, you may retire with an unreduced pension as early as age 56. We are pleased that these new changes will give our associates more flexibility in their retirement planning and that associates with long service will receive an unreduced benefit if they retire in their late fifties.

The brochure, entitled "A Guide to the Early Retirement Options Under the Pension Plan," stated, in pertinent part:

This update describes several permanent changes to the Pension Plan that will be effective for retirements or terminations on or after January 1, 1995.... Although there is no need to make large scale changes to our Pension Plan, the plan has been improved to make it possible to begin receiving pension benefits sooner, in some cases as early as age 50, in order to better meet the business needs of the company and provide more flexibility to employees. There has also been an increase in the benefits available to many employees who are already eligible for early retirement with a reduced pension.... All other provisions of the plan will remain the same for 1995 including:

— The Benefit Formula;

— Vesting Provisions;

— Pre–Retirement Spouse Benefit;

— Optional Forms for the Payment of Retirement Benefits; and

— The pension Supplement for Retirees Ages 60–65.

. . . . .

You can receive an UNREDUCED pension benefit when you are:

S 56 years old or more with 25 years of service (if you were born before 1955);

. . .

S 60 years old or more and your age and years of service added together are at least 85 (the Rule of 85); or

S 65 years old or more and you have at least 5 years of service.

The Guide directed employees to consult the 1991 *Your Benefits Program* booklet for additional detail. According to Hancock, the booklet, together with its annual updates, constitutes what in ERISA par-

lance is known as the Summary Plan Description (SPD).

In 1995, and again in 1996, the SPD was updated to reflect the 1994 Amendment. The updates contained the following chart revising the SPD:

**ELIGIBILITY FOR EARLY RETIREMENT—Revised 1/1/95**

(See pages PP–4 through PP–6 of *Your Benefits Program* )

For retirements or terminations on or after January 1, 1995, the eligibility requirement for early retirement with either an unreduced or reduced pension have been expanded, which enables you to receive retirement benefits earlier than in the past.

You can now receive an *unreduced* pension benefits when you are:

S Age 56 or older with 25 years of service, if you were born before 1955, or

S Age 57 or older with 25 years of service.

Also, you can now receive a *reduced* pension benefit when you are:

S Age 50 or older with 15 years of service.

The new eligibility requirement, along with the existing eligibility requirements, are summarized in the following chart:

Early Retirement Options

*Unreduced Pension Benefit* Minimums:

| Age | Years of Service | Total of Age and Service |
|---|---|---|
| 60 | 25 | 85 |
| * | 25 | not applicable |

*Reduced Pension Benefit* Minimums:

| Age | Years of Service | Total of Age and Service |
|---|---|---|
| 50 | 15 | not applicable |
| 55 | 15 | 70 |
| 60 | 10 | 70 |

* In accordance with IRS regulations, if you were born before 1955, you can retire with an unreduced benefit at age 56; if you were born in 1955 or later, you can retire with an unreduced benefit at age 57.

If you are an active employee and are eligible to retire with an unreduced pension, you will receive a Pension Supplement as described on page PP–5 of *Your Benefits Program.*

In September of 1996, the plaintiffs received Personal Benefits and Compensation Statements from Hancock notifying them that:

> You are vested in your accrued benefit. Should you leave the Company once you are vested and before you retire, you will still be eligible for a pension at your Normal Retirement Date, and earlier in some instances.

**Projected Retirement Dates**

You are eligible to retire:

S on your Normal Retirement Date of 12/01/2015 [*i.e.,* age 65]

S with an unreduced benefit on 12/01/2006 [*i.e.,* age 56] and a pension supplement until you reach your Normal Retirement Date

S with a reduced benefit on 12/01/2000 [*i.e.,* age 50]

*Plaintiffs' Claims*

In 1997, Hancock sold the General Benefits Operations Division. At the time, all of the plaintiffs had accrued at least twenty-five years of service. With their terminations imminent, the plaintiffs, who were then forty-eight years old or younger, wrote to the Plan Administrator seeking to elect full early retirement pension benefits commencing at age 56. On January 3,

1997, the Administrator responded with a written rejection:

> The statements in your letter regarding the calculation of your pension are incorrect. Upon your termination from service with John Hancock, you will have a vested accrued benefit under the Plan. As such, you will be entitled to an unreduced pension benefit commencing upon attainment of your Normal Retirement Date, which is defined as the first day of the month in which you reach age 65. In addition, since you have completed fifteen years of service under the Plan, you are entitled to begin receiving your pension benefit at any time upon your attaining age 50.
>
> However, since you will have terminated your service with John Hancock prior to your 50th birthday, any pension benefit that you elect to receive prior to your Normal Retirement Date will be subject to an actuarial reduction of .4% per month, or 4.8% per year, measured from your Normal Retirement Date. Thus, contrary to the statement in your letter, you will not be entitled to an unreduced pension benefit commencing at age 56. Any benefit commencement date that you elect that is prior to age 65, whether that benefit commences before or after age 56, will result in an actuarial reduction as measured from your Normal Retirement Date.
>
> We require that a participant give us 30 days notice of his/her intention to retire. The earliest such an election can be made is within 30 days of retirement eligibility, which in your case is age 50. At that time you may elect to retire and defer receipt of your pension to a future date, however you must elect your payment form at the time you elect to re-

tire, and this election may not subsequently be changed.

> Because you are not eligible to retire, and therefore not eligible to make a retirement election, and because of the factual inaccuracies in your letter, we will not treat your letter of January 13, 1997 as a request for the commencement of your pension benefit on July 1, 2005.

In sum, according to the Administrator's interpretation of the amended Plan, only participants who were age 56 or older and still employed by Hancock were eligible for full early retirement benefits. Since the plaintiffs were under age 56 and were facing imminent termination, they were, in the Administrator's view, ineligible for the full benefits option. This lawsuit ensued.[9]

## DISCUSSION

■ The parties disagree whether the appropriate standard of review of the Administrator's Plan interpretation is *de novo* or deferential, although both contend that they are entitled to judgment whichever standard is applied. Hancock, citing *Recupero v. New England Tel. And Tel. Co.*, 118 F.3d 820, 827 (1st Cir.1997), maintains that a deferential "arbitrary and capricious" standard of review is mandated by the following Plan language:

> The Company shall be the named fiduciary and the administrator of the Plan for purposes of ERISA and shall have the authority to control and manage the operation and administration of the Plan. The Company shall have the power to adopt such rules and regulations as it may deem necessary and appropriate for the efficient operation and administration of the Plan.... The Company shall interpret the Plan and determine all questions arising under it. Any such

---

**9.** Hancock does not contest the plaintiffs' right to receive reduced benefits at age 50, regardless of their employment status.

determination by the Company shall be binding on all persons affected thereby. Plan, § 11.1.

■ The usual rule is that a clear grant of discretionary authority to a plan administrator to construe the terms of a plan will trigger an arbitrary and capricious standard of review. *Recupero,* 118 F.3d at 827; *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 583 (1st Cir.1993). In the face of compelling Plan language granting such authority, plaintiffs make the inventive argument that because the court, and not the Administrator, has the ultimate authority to make a binding interpretation of the Plan, the Administrator cannot be said to have the requisite unbridled discretionary authority. On closer examination, however, the plaintiffs' argument does not bear the weight that it is assigned. While the court interprets a plan, it then compares its interpretation to that of the administrator. The court will substitute its view only if the administrator's interpretation of the plan has crossed the boundary of what might plausibly be deemed reasonable. Hancock, for its part, accurately describes the court's task as requiring a determination "whether the [Administrator's] interpretation rendered any language in the plan meaningless, whether the interpretation was consistent with the plan language, and whether the provision in question has been interpreted consistently." Hancock Memorandum, at 10.[10] *See Caola v. Delta Air Lines, Inc.,* 59 F.Supp.2d 166, 170 (D.Mass.1999).

■ In the alternative, citing *Gentile v. John Hancock Mut. Life Ins. Co.,* 951 F.Supp. 284, 290 (D.Mass.1997), plaintiffs

assert that *de novo* review is required because of the conflict of interest that arises from Hancock's financial stake in the Plan. While a disabling conflict might exist where a company's balance sheet could be jeopardized by its obligations to an underfunded plan, here it is undisputed that the Plan is fully funded. *See Doe v. Travelers Ins. Co.,* 167 F.3d 53, 57 (1st Cir.1999) (a general interest in preserving company assets does not create a conflict warranting *de novo* review). *Cf. Doyle v. The Paul Revere Life Ins. Co.,* 144 F.3d 181, 184 (1st Cir.1998) (where a potential conflict of interest exists, the arbitrary and capricious standard is to be given more "bite").[11]

■ Having determined that the arbitrary and capricious standard applies, I will turn first to the parties' cross-motions for summary judgment on Count I. Plaintiffs insist that because they have attained the 25 years of service required by the 1994 Amendment, they are entitled to receive unreduced benefits at age 56. Plaintiffs maintain that nothing in the amended Plan or the revised SPD states that an otherwise eligible participant must be employed by Hancock to qualify for unreduced benefits at age 56.

The SPD and its chart summarizing the 1994 Amendment, which was distributed in 1995, and again in 1996, states that "[f]or *retirements* or *terminations* on or after January 1, 1995, the eligibility requirement for early retirement with either an unreduced or reduced pension have been expanded, which enables you to receive retirement benefits earlier than in the past." (Emphasis added.) The chart further states that "if you were born before 1955,

---

**10.** If plaintiffs' argument is taken to its logical conclusion, there could never be a review under an arbitrary and capricious standard.

**11.** Plaintiffs also make the unpersuasive argument that because Hancock never recited the discretion-triggering language in documents distributed to Plan participants, Hancock may not now rely upon it.

you can retire with an unreduced benefit at age 56 ... if you have twenty five years of service." Nowhere is it said that a participant must be a current employee to qualify.[12]

The unambiguous language of the SPD is devastating to Hancock's position. Undaunted, Hancock insists that the SPD says something that it does not. "The SPD clearly explains to participants that there is a dichotomy between participants who become eligible for early retirement while actively employed with John Hancock and those who terminate from employment prior to becoming eligible to retire from the company." Hancock Memorandum, at 14.[13] This simply is not true.[14]

Perhaps recognizing as much, Hancock suggests that even if the language of the SPD has some significance, the court should nonetheless ignore it. To do so

would be an ERISA sin. ERISA requires that a:

> summary plan description shall contain the following information: ... the plan's requirements respecting eligibility for participation and benefits; ... circumstances which may result in disqualification, ineligibility, or denial or loss of benefits ...."

29 U.S.C. § 1022(b). *See also* 20 C.F.R. § 2520–102–2(b) ("The format of the summary plan description must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception[s], limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant ...."). If Hancock intended to limit the full benefits early retirement option created by the 1994 Amendment to active employees, the SPD was required to say so. It did not.[15]

12. Hancock attempts to diminish the significance of the 1995 and 1996 updates by arguing that they are only "pocket parts" supplementing the pre-existing 1991 *Your Benefits Program* SPD. (A lawyer will recognize the allusion, a Plan participant probably would not). This is meaningless. It is undisputed that the chart was intended to explain the 1994 Amendment to Plan participants. The documents specifically state that "[t]he new eligibility requirements, *along with the existing eligibility requirements,* are summarized in the following chart." (Emphasis added).

13. The tortuous path trod by Hancock in reaching this dubious conclusion can be traced as follows. Hancock argues that the chart contained in the 1995 and 1996 updates was meant to be read in conjunction with the *Your Benefits Program* booklet. Buried deep within the booklet is text distinguishing between benefits for retirees and benefits for terminated participants. ERISA plans are typically written in tortured syntax and, as a result, participants have a duty to read their provisions carefully. But even the most sophisticated reader, on being told that the charts in the 1995 and 1996 updates were meant to illustrate both new and existing eli-

gibility requirements for "expanded" benefits offered for "retirements or *terminations* on or after January 1, 1995," would not suspect that an oblique reference directing the reader to "pages PP–4 through PP–6" of the 1991 booklet was meant to limit and contradict the promises of the charts. This is particularly so given that the language Hancock relies on in the 1991 booklet is found at page PP–10, and not at pages PP–4 through PP–6.

14. The charts do state that to qualify for a supplementary benefit a participant must be an active employee. "If you are an active employee and are eligible to retire with an unreduced pension, you will receive a Pension Supplement as described on page PP–5 of *Your Benefits Program.*" Plaintiffs persuasively argue that this language demonstrates that Hancock knew how to restrict benefits to active employees when it so chose.

15. In similar fashion, Hancock attempts to put distance between itself and the individualized summaries it distributed to the plaintiffs in September of 1996, entitled "Your Personal Benefits and Compensation Statements." Hancock argues that it cannot be held respon-

Even if the SPD did not unambiguously state that retirees and terminated employees were equally eligible for the expanded benefits offered by the 1994 Amendment (which it did), a careful reading of the 1994 Amendment confirms that this was the drafters' intent. The 1994 Amendment to the Plan declared that:

> [s]ection 4.4(A), relating to the amount of Early Retirement Pension Benefits, ... with respect to Class B Participants ... [is amended] to provide that in addition to the current unreduced early retirement provisions, that such a Participant who has attained the first day of the month in the ten year period prior to his Social Security Normal Retirement Age [i.e., age 56] and whose Years of Service equal at least twenty-five (25), shall be entitled to a Pension payable on his Early Retirement Date in an amount equal to the sum of (a) the yearly amount of Pension which would be payable to him under Sections 4.1, 4.2 or 4.3, whichever would be applicable to him, if his Early Retirement Date were his Normal Retirement Date, but computed on the basis of his Compensation and Service prior to his Early Retirement Date, plus (b) the temporary Pension described in Section 4.4(B), if applicable.

Under the amended language of § 4.4(A), plaintiffs were made eligible for full benefits at age 56, if they had accumulated the required 25 years of service. The only question the Amendment did not clearly answer is whether the amount of the bene-

fits due was to be determined under § 4.1, § 4.2, or § 4.3.

Hancock argues that to answer that question, the court must look to § 8.1, which defines the benefits due to a participant "who has completed at least five (5) Years of Service [and who is] terminated, other than by retirement." Under § 8.1(A), a terminated participant who has accumulated at least five years of service is entitled to full benefits, as calculated under § 4.1, when he or she reaches age 65. Section 8.1(B) applies to terminated participants who elect the § 3.2 early retirement option subject to the § 4.3 reduction-in-benefits formula.

Hancock's argument glosses over the fact that plaintiffs have not made an election under § 3.2.[16] Plaintiffs have instead elected benefits under § 4.2. To the extent that it admits that this might be possible, Hancock argues that § 4.2 applies only to "employees," which terminated participants are not. While the Plan defines an "employee" as "any person employed as a common law employee on a salaried basis," § 4.2 does not distinguish between current and former employees, unlike other sections of the Plan. *See, e.g.,* §§ 4.3(B)(i) and 6.1(B), respectively, which define an active employee as a "Participant who was in Service immediately prior to his Early Retirement Date" or as a "Participant who had attained his Normal Retirement Date and had not terminated Service."[17]

Hancock argues that even if the term "employee" as used in § 4.2 is not determinative, § 4.3 and § 8.1 require that plaintiffs nonetheless make their election under

---

sible for its own explanation of the Plan because the "Personal Statements" do not qualify as Plan documents. This is a distressing argument that reflects badly on Hancock's dealings with its own employees.

**16.** Section 3.2, it will be recalled, permits current or terminated employees with 15

years of accrued service to elect early retirement at age 50.

**17.** Moreover, it is clear that the term "Employee" is used in § 4.2(B) to distinguish (and include) participants transferred into the Plan as a result of corporate acquisitions.

§ 4.3. Section 4.3(B)[18] states that participants who do not qualify under § 4.2(B) will receive a reduced pension benefit calculated either under subsection (i) if the participant was in service the day before his early retirement date (i.e., still employed), or under subsection (ii) "in the case of a Participant who terminates from Service prior to his Early Retirement Date." Hancock argues that the plaintiffs fall under § 4.3(B)(ii) because they were terminated before they reached their Early Retirement Date of age 50. Section 4.3, however, by its own terms applies only if § 4.2(B) does not.

Hancock next argues that § 8.1's distinction between terminated and retired participants applies to the Plan as a whole, and therefore modifies the terms of the 1994 Amendment. Nowhere in the Plan, however, is § 8.1 given such a sweeping application. In fact, the specific cross-reference in § 8.1 is to § 3.2 and not to the Plan as a whole. Moreover, if the argument is taken to its logical conclusion, it sweeps all terminated participants under § 4.3(ii), including those who qualify for benefits under § 4.2(B).[19]

Hancock maintains that even if plaintiffs' interpretation of the Plan is plausible, the arbitrary and capricious standard of review nonetheless salvages the Administrator's interpretation. A determination of reasonableness, however, as previously noted, depends on "(1) whether the interpretation renders any language in the plan 'meaningless or internally inconsistent,' (2) whether the interpretation is 'clearly contrary to the clear language of the plan,'

and (3) whether the provision at issue has been interpreted and applied consistently." *Caola v. Delta Air Lines, Inc.*, 59 F.Supp.2d at 170. The Administrator's interpretation fails on all three counts. It renders substantial portions of §§ 4.3(B) and 8.1(A) superfluous and imports a definition of the term "employee" that is inconsistent with its use elsewhere in the Plan. It is further inconsistent with the reading given to the Plan by Hancock's own CEO and its Human Resources Department. Hancock nonetheless argues that while it may have *spoken* contradictorily, it has not *acted* inconsistently, because it has never allowed a claim under plaintiffs' interpretation of the Plan. This distinction between word and deed is not what *Caola* meant by consistency. Moreover, obstinacy in error is the soul of capriciousness.

### ORDER

For the foregoing reasons, Hancock's motion for summary judgment as to Count I is *DENIED*. Plaintiffs' cross-motion for summary judgment as to Count I is *ALLOWED*. Hancock's motion for summary judgment as to Count II and Count III is *MOOT*.[20]

SO ORDERED.

---

18. Section 4.3(A), it will be remembered, is not applicable to Class B Participants.

19. Hancock argues that the references to Article VIII in § 4.2(B) makes § 8.1(B) applicable, but as discussed above § 8.1 applies only if § 4.3 applies or if benefits are sought under § 3.2.

20. Because the court finds that the plaintiffs are entitled to judgment under Count I, the court need not review Hancock's motion for summary judgment as to Counts II and III.